IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

**ELEANORE DONOFRIO,**

Plaintiff,

v.

**CIVIL ACTION NO. 5:22-CV-302**
Judge Bailey

**MAGNA SERVICE AGENCY, INC.** and
**HARRY FERRELL,**

Defendants.

## ORDER

Pending before this Court is Defendant's Second Motion to Dismiss Plaintiff's Original Complaint [Doc. 20] and accompanying Memorandum in Support [Doc. 21], filed May 8, 2023. A Response was due on or before May 22, 2023. No Response has been filed by plaintiff. Thus, this matter is now ripe for adjudication. For the reasons that follow, this Court will grant defendant's Second Motion to Dismiss.

### Background and Procedural History

This case was originally filed in the Circuit Court of Ohio County, West Virginia, on November 3, 2022. Defendants filed a Notice of Removal [Doc. 1] on December 7, 2022.

Plaintiff alleges she was wrongfully terminated on or about November 22, 2020, from Magna Service Agency, Inc. ("Defendant"). *See* [Doc. 1 at ¶ 1]. Plaintiff asserts she was terminated after reporting medical conditions, and after reporting safety issues in the workplace. Plaintiff reported that she suffers from "High Blood Pressure, Diabetes, 'liver problems', vertigo, allergies, 'and other stomach problems'." *See* [Id. at ¶ 5]. Plaintiff

states she "complained that the toilets were so nasty that they were complicating her medical issues" and "complained to supervisors Mike Pocoler (unsure of spelling), Harry Ferrell (unsure of spelling), and others." *See* [Id.]. Plaintiff further asserts that she "often, as part of her work, drove 4:00am – 4:00pm and sometimes later than 4:00pm without any bathroom breaks." *See* [Id. at ¶ 6]. Plaintiff states she had to go to a doctor to get medication to alleviate the swelling in her legs and was not permitted to take breaks to stretch her legs. *See* [Id.]. Plaintiff further states that Defendant failed to accommodate by not permitting her very short breaks to eat to keep her blood sugar balanced. *See* [Id.]. Lastly, plaintiff asserts that she complained to management about the distracting "chit-chat" over the "CB" that required her to take her hands off the wheel. *See* [Id. at ¶ 7]. Within a few days, after plaintiff expressed her poor work conditions, she alleges she was written up for insubordination and then was terminated. *See* [Id.].

The Complaint asserts seven (7) causes of action:

(1)     Violations of the West Virginia Human Rights Act;

(2)     Negligent Hiring;

(3)     Negligent Retention;

(4)     Negligent Training;

(5)     Intentional Infliction of Emotional Distress;

(6)     Negligent Infliction of Emotional Distress; and

(7)     Reprisal / Retaliation in Violation of Substantial Public Policy (Organizational Policy - ***Collins v. Elkay Mining Co.***, 179 W.Va. 549, 371 S.E.2d 46 (1988)).

2

*See* [Doc. 1-1].

Defendant filed its Motion to Dismiss, or in the Alternative, For More Definitive Statement [Doc. 5] on December 30, 2022.  Therein, defendant moved this Court to dismiss plaintiff's Complaint in its entirety for failure to state a claim upon which relief can be granted in accordance with Federal Rule of Civil Procedure 12(b)(6).  *See* [Doc. 5 at 2–8].  In the alternative, defendant requested this Court to order plaintiff to provide a more definite statement of her claims to identify the actual alleged tortfeasor, or, that plaintiff be ordered to file an Amended Complaint plead with specificity, pursuant to Rule 12(e) of the Federal Rules of Civil Procedure.  *See* [Id. at 8].

This Court granted plaintiff two (2) extensions of time to file responsive briefing.  *See* [Docs. 11 & 13].  Plaintiff filed a Response on March 10, 2023, following her request for two (2) extensions.  *See* [Doc. 14].  In her response, plaintiff states she has no objection to defendant's request that plaintiffs be ordered to provide a more definite statement.  *See* [*id.* at 1 ("Alternatively, Defendant requested Plaintiff provide a more definite statement. Plaintiff has no objection to the same.")].  This Court issued an Order granting defendant's Alternative Motion for a More Definite Statement and directed plaintiff to file her Amended Complaint on or before April 11, 2023.  *See* [Doc. 15].

Plaintiff failed to file an Amended Complaint on or before April 11, 2023.  On April 12, 2023, plaintiff filed a Motion to Extend Timeframe to File Amended Complaint requesting two (2) additional days to file the Amended Complaint, which was already overdue.  *See* [Doc. 16].  That same day, defendant filed a Response in Opposition to Plaintiff's Motion for Extension of Time to File Amended Complaint on the grounds that it

was overdue, unreasonable, and not made in good faith pursuant to Federal Rule of Civil Procedure 6(b).  *See* [Doc. 17].  While plaintiff's request for an extension of time was still pending, she filed an overdue Amended Complaint without leave of Court.  *See* [Doc. 18].

On April 13, 2023, this Court denied plaintiff's Motion for Extension of Time, striking plaintiff's Amended Complaint from the docket.  *See* [Doc. 19].

Therefore, as of the date of this Order, the operable complaint is plaintiff's original complaint filed on December 7, 2022.  *See* [Doc. 1-1].

**Legal Standard**

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face."  ***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 570 (2007); *see also **Giarratano v. Johnson***, 521 F.3d 298, 302 (4th Cir. 2008) (applying the ***Twombly*** standard and emphasizing the necessity of *plausibility*).  When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff.  ***Edwards v. City of Goldsboro**,* 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice.  ***Anheuser-Busch, Inc. v. Schmoke***, 63 F.3d 1305, 1312 (4th Cir. 1995).  In ***Twombly***, the Supreme Court, noted that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do. . . ." **Twombly**, 550 U.S. at 555, 570 (upholding the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible.").

This Court is well aware that "[M]atters outside of the pleadings are generally not considered in ruling on a Rule 12 Motion." **Williams v. Branker**, 462 F. App'x 348, 352 (4th Cir. 2012). "Ordinarily, a court may not consider any documents that are outside of the Complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." **Witthohn v. Fed. Ins. Co.**, 164 F. App'x 395, 396 (4th Cir. 2006). However, the Court may rely on extrinsic evidence if the documents are central to a plaintiff's claim or are sufficiently referred to in the Complaint. **Id**. at 396–97.

## Discussion

As further detailed herein, all of plaintiff's claims must be dismissed for failure to state a claim upon which relief can be granted.

**I.   Plaintiff did not plead facts sufficient to raise an inference of disability discrimination or gender discrimination in violation of West Virginia Human Rights Act.**

The West Virginia Human Rights Act ("WVHRA") prohibits employers from discriminating against any individual with regard to "compensation, hire, tenure, terms, conditions or privileges of employment." W.Va. Code § 5-11-9(c). Discrimination "means to exclude from, or fail or refuse to extend to, a person equal opportunities because of . . . sex [or] . . . disability. . . ." W.Va. Code § 5-11-3(h). "Disability" is defined as a "mental or physical impairment which substantially limits one or more of such person's major life activities. The term 'major life activities' includes functions such as caring for one's self,

performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working. . . ."  W.Va. Code § 5-11-3(m)(1).  Discrimination claims brought under the WVHRA are governed by the burden-shifting framework of Title VII of the Civil Rights Act of 1964, laid out in ***McDonnell Douglas Corp. v. Green***, 411 U.S. 792, 802–04 (1973).  *See **Shepherdstown Volunteer Fire Dep't v. State ex rel. State of W.Va. Human Rights Comm'n***, 172 W.Va. 627, 309 S.E.2d 342, 352 (1983) (reaffirming use of the ***McDonnell Douglas*** standard in West Virginia).

A plaintiff must establish the following to establish a prima facie case of unlawful employment discrimination: (1) she is a member of a protected class; (2) the employer made an adverse employment decision affecting her; and (3) but for her protected status, the employer would not have made the adverse decision.  Syl. Pt. 3, ***Conaway v. E. Associated Coal Corp.***, 178 W.Va. 164, 170, 358 S.E.2d 423, 429 (1986).  To prove the third element of the prima facie case, a plaintiff must "show some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of a protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion."  ***Id***. at 170–71, 358 S.E.2d at 429–30.  The plaintiff can establish this link by demonstrating *inter alia* unequal or disparate treatment between members of the protected class and others; the elimination of legitimate reasons for the decision or statistics showing that members of the protected class received substantially worse treatment than others.  ***Id***. at 171, 358 S.E.2d at 430.

In the present case, plaintiff has failed to establish any of the elements necessary to establish a prima facie case of unlawful discrimination.  Plaintiff has failed to plead facts

establishing that she was treated less favorably because of her membership in a legally protected category under state or federal law.

Plaintiff does not provide any factual basis regarding her allegation that similarly situated male employees or non-disabled employees were treated more favorably than plaintiff. Specifically, plaintiff complained that the portable toilets that were made available for all employees of Magna were "so disgusting no one could use them setting [(sic)] down" and were "so nasty that they were complicating her medical issues." *See* [Doc. 1-1 at ¶ 11].

Plaintiff further alleges she suffered gender discrimination because male employees who reported medical conditions were not terminated. Plaintiff's alleged medical conditions are "High Blood Pressure, Diabetes, 'liver problems', vertigo, allergies, 'and other stomach problems'." *See* [id. at ¶ 10]. Plaintiff does not specify what her liver problems and/or "other stomach problems" are, nor does she allege any connection between her medical conditions and the portable toilets on job sites.

Moreover, plaintiff attempts to connect the dirty bathroom to a gender discrimination claim, in that plaintiff, as a female, has to sit down to use the bathroom. *See* [id. at ¶ 11]. However, plaintiff did not address the fact that males often sit down to use the bathroom. She also did not assert that she was the only employee who was unsatisfied with the cleanliness of the portable toilets on job sites.

When considering only the allegations contained in the Complaint and the exhibits attached to the Complaint, this Court finds that plaintiff does not allege enough facts to state a claim to relief that is plausible on its face with respect to her disability discrimination or gender discrimination in violation of WVHRA.

7

II.     **Plaintiff's common law tort claims of negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress must be dismissed because they are barred by the immunity provisions of the Workers' Compensation Act.**

Under West Virginia law, employers and their employees and agents are expressly exempt from liability for common law workplace claims pursuant to the provisions of the West Virginia Workers' Compensation Act ("WCA"). *See* W.Va. Code § 23-2-6.  In pertinent part, the WCA provides:

> Any employer subject to this chapter who procures and continuously maintains workers' compensation insurance as required by this chapter or who elects to make direct payments of compensation as provided in this section is not liable to respond in damages at common law or by statute for the injury or death of any employee, however occurring, after so subscribing or electing, and during any period in which the employer is not in default and has complied fully with all other provisions of this chapter.

Id. "The Act was developed to provide a speedy and expeditious means of compensating injured employers for workplace injuries." ***Fugate v. Frontier W. Virginia, Inc.***, 2017 WL 3065216, at *5 (Johnston, J.) (citing ***Meadows v. Lewis***, 172 W.Va. 457, 470, 307 S.E.2d 625, 638 (1983)).  To effect that purpose, the Act creates "sweeping immunity" for employers for all tort actions by employees for injuries occurring "in the course of and resulting from a claimant's employment." ***Bias v. Eastern Associated Coal Corp.***, 220 W.Va. 190, 195, 196, 640 S.E.2d 540, 545, 546 (2006).  The immunity provided by the WCA encompasses an action for negligent or intentional infliction of emotional distress. *See **id**.* (immunity bars employee's negligent infliction of emotional distress action);

*Miklewski v. Talbott Personal Care, Inc.*, 2020 WL 4722384, at *3 ("This Court agrees with the defendants that the tort of outrage/IIED claim is barred by workers' compensation immunity.").

An employer's immunity under the WCA is not without limitation. Immunity can be lost if an employer (1) defaults in payments required by the WCA or otherwise falls out of compliance with the Act, (2) acts with "deliberate intent" to injure the employee, or (3) "in such other circumstances where the Legislature has by statute expressly provided an employee a private remedy outside the workers' compensation system." Syl. Pt. 2, *Bias*, 220 W.Va.190, 640 S.E.2d 540.

Deliberate intent is when an employer has deliberately intended to cause injury or death to an employee.    *See id*. at 194, 640 S.E.2d 544.  While plaintiff does plead the broad tort of intentional infliction of emotional distress, such a broad pleading of this intentional tort is insufficient to plead deliberate intention to cause injury.  *See Weirton Health Partners, LLC v. Yates*, 2010 WL 785647, at *6 (N.D. W.Va. Mar. 4, 2010) (Stamp, J.).  In *Weirton Health Partners*, this Court found that, in order for an intentional infliction of emotional distress claim to fall outside of the immunity provisions of the West Virginia Workers' Compensation Act, the plaintiff must plead facts that suggest "'an actual, specific intent,'" and liability cannot result from "' (A) Conduct which produces a result not specifically intended; (B) conduct that constitutes negligence, no matter how gross or aggravated, or (C) willful, wanton or reckless misconduct.'"   *Id*. (quoting W.Va. Code § 23-4-2(d)(2)(I) *amended by* 2023 West Virginia Laws H.B. 3270 (West's No. 314)).

Without pleading deliberate intent or one of the two other limitations, plaintiff's employment-derived common law claims of negligence, intentional infliction of emotional distress[1], and negligent infliction of emotional distress are barred by the WCA. Thus, these claims are barred by the immunity provisions of the WCA and will be dismissed.

## III.    Plaintiff did not plead facts sufficient to establish that defendant Magna was negligent.

"In order to establish a *prima facie* case of negligence in West Virginia, it must be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff. No action for negligence will lie without a duty broken." Syl. Pt. 1, ***Parsley v. Gen. Motors Acceptance Corp.,*** 167 W.Va. 866, 280 S.E.2d 703 (1981); Syl. Pt. 4, ***Jack v. Fritts,*** 193 W.Va. 494, 457 S.E.2d 431 (1995); Syl. Pt. 3, ***Aikens v. Debow***, 208 W.Va. 486, 541 S.E.2d 576 (2000); Syl. Pt. 5, ***Lockhart v. Airco Heating & Cooling, Inc.***, 211 W.Va. 609, 567 S.E.2d 619 (2002).

"The determination of whether a defendant in a particular case owes a duty to the plaintiff is not a factual question for the jury; rather the determination of whether a plaintiff is owed a duty of care by a defendant must be rendered by the court as a matter of law." Syl. Pt. 5, ***Aikens v. Debow***, 208 W.Va. 486, 541 S.E.2d 576 (2000); Syl. Pt. 3, ***Lockhart v. Airco Heating & Cooling, Inc.***, 211 W.Va. 609, 567 S.E.2d 619 (2002); Syl. Pt. 3,

---

[1] Defendant asserts that plaintiff did not plead facts sufficient to establish outrageous conduct to the level necessary to amount to intentional infliction of emotional distress. *See* [Doc. 21 at 13–15]. Even if this Court held that plaintiff's intentional infliction of emotional distress claim was not barred by the WCA, this Court would still dismiss the intentional infliction of emotional distress claim because plaintiff's complaint does not rise to the level of outrageousness necessary to amount to an intentional infliction of emotional distress claim.

*Jackson v. Putnam Cty. Bd. of Educ.*, 221 W.Va. 170, 653 S.E.2d 632 (2007). "The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?" Syl. Pt. 3, *Sewell v. Gregory*, 179 W.Va. 585, 371 S.E.2d 82 (1988).

Claims of negligent hiring, training, and supervision are governed by general negligence principles under West Virginia law. *See Taylor v. Cabell Huntington Hosp., Inc.*, 208 W.Va. 128, 538 S.E.2d 719, 725 (2000) (treating negligent supervision like other claims based in negligence).

"The basic elements of any negligence claim are duty, breach of that duty, causation, and damages." *Biser v. Mfrs. & Traders Trust Co.*, 211 F.Supp.3d 845, 856 (S.D. W.Va. 2016) (Berger, J.). "Under West Virginia law, negligent supervision claims must rest upon a showing that the employer failed to properly supervise its employees and, as a result, those employees proximately caused injury to another." *Ferrell v. Santander Consumer USA, Inc.*, 859 F.Supp.2d 812, 817–18 (S.D. W.Va. 2012) (Copenhaver, J.). "Plaintiffs alleging negligent supervision or training must first make an underlying showing of a negligence claim as to an employee, and then demonstrate that the employee was negligently trained or supervised." *Taylor v. Cabell Huntington Hosp., Inc.*, 208 W. Va. 128, 538 S.E.2d 719, 725 (2000).

Here, plaintiff's Complaint falls woefully short.    In her Complaint, plaintiff's allegations focus on the alleged fact that a competent supervisor and/or Human Resources Professional "should have known that accommodations are available, and/or that it is not proper to terminate an employee who is seeking an accommodation, and or complaining about work place conditions." *See* [Doc. 1-1 at ¶ 24].  However, these allegations would arise from occurrences after the employees like Harry Ferrell were hired.  Plaintiff has not alleged a causal connection to support a cause of action for negligent hiring or retention upon which relief may be granted.

Moreover, plaintiff's claim of negligent training or supervision will be dismissed because West Virginia does not recognize a standalone claim for negligent training or supervision. *See **Heslep v. Americans for African Adoption, Inc.***, 890 F.Supp.2d 671, 687 (N.D. W.Va. 2012) (Keeley, J.) (citing ***Webb v. Raleign Cnty. Sheriff's Dep't***, 761 F.Supp.2d 378, 397 (S.D. W.Va. 2010) (Berger, J.) and ***Taylor v. Cabell Huntington Hosp., Inc.***, 208 W.Va. 128, 538 S.E.2d 719, 725 (2000)).  Instead, a claim for negligent supervision requires a separate finding of negligence on the part of the employee being supervised. ***Taylor***, 208 W.Va. at 134, 538 S.E.2d at 725.

Here, plaintiff's Complaint does not make any averment or explanation as to how defendant Magna allegedly was negligent in training its employees or how that impacted plaintiff.

Thus, plaintiff has failed to posit any connection between her assumption that her termination was improper and the training of defendant Magna's employees.  Because she

has not alleged an actionable breach of duty, all three (3) of her negligence claims fail and will be dismissed.

## IV.    Plaintiff did not plead facts sufficient to establish that her discharge was in violation of substantial public policy.

West Virginia's tort of retaliatory discharge evolved as an exception to the rule that an employer may terminate an at-will employee at any time. *Swears v. R.M. Roach & Sons, Inc.*, 225 W.Va. 699, 703–04, 696 S.E.2d 1, 5–6 (2010) (citing *Wright v. Standard Ultramarine & Color Co.*, 141 W.Va. 368, 90 S.E.2d 459 (1955) (describing the evolution of the tort)).  The tort was first carved out in *Harless v. First National Bank*, where the Supreme Court of Appeals of West Virginia held that "where the employer's motivation for the discharge is to contravene *some substantial public policy principle*, then the employer may be liable to the employee" notwithstanding the general at-will termination rule.  Syl. Pt. 1, 162 W.Va. 116, 246 S.E.2d 270 (1978) (emphasis added).

Thus, a *Harless* retaliatory discharge claim cannot lie absent a substantial West Virginia public policy allegedly violated in terminating the employee.  The determination whether a substantial public policy exists is a question of law for the court. *Page v. Columbia Natural Res.*, 198 W.Va. 378, 384, 480 S.E.2d 817, 823 (1996).  Although courts may look to "established precepts in [the West Virginia] constitution, legislative enactments, legislatively approved regulations, and judicial opinions" in determining whether a substantial public policy exists, *Birthisel v. Tri-Cities Health Servs. Corp.*, 188 W.Va. 371, 377, 424 S.E.2d 606, 612 (1992), *Harless* retaliatory discharge claims "are generally based on a public policy articulated by the legislature." *Swears*, 225 W.Va. at 704, 696 S.E.2d 1 (citing *Shell v. Metro. Life Ins. Co.*, 183 W.Va. 407, 413, 396 S.E.2d

13

174, 180 (1990)).  Importantly, the public policy relied upon must not only exist—it must be **substantial**.  **Feliciano v. 7-Eleven, Inc.**, 210 W.Va. 740, 745, 559 S.E.2d 713, 718 (2001).

Additionally, "[i]nherent in the term 'substantial public policy' is the concept that the policy will provide specific guidance to a reasonable person"; the public policy must provide fair notice as to what conduct is or is not prohibited. **Kanagy v. Fiesta Salons**, 208 W.Va. 526, 530, 541 S.E.2d 616, 620 (2000) (quoting Syl. Pt. 3, **Birthisel**, 188 W.Va. at 372, 424 S.E.2d at 607).  In other words, "[a]n employer should not be exposed to liability where a public policy standard is too general to provide any specific guidance or is so vague that it is subject to different interpretations." **Birthisel**, 188 W.Va. at 377, 424 S.E.2d at 612.

In her Complaint, plaintiff states "[t]he 'sources of substantial public policy' . . . are as follows:"

> [Count 9] Defendants discharge of Plaintiff was due to Plaintiffs concern with
> safety procedures. **Wiggins v. Eastern Associated Coal Corp.**, 178 W.Va.
> 63, 357 S.E.2d 745 (1987).  Namely, after complained about the illegal use
> of CD "chit chat", and that the "chit chat" was not work related, and was
> distracting her, and/or after she complained about the terrible conditions of
> the trucks and toilets that affected her medical issues, she was written up
> and fired.

[Doc. 1-1 at ¶ 33].  Plaintiff has failed to allege that radio "chit chat", or that "distracting" conversation in the workplace is a violation of public policy.

Moreover, if a statutory scheme offers a private cause of action to guarantee conformity with its main public policy goals, that statutory cause of action cannot be replaced by a *Harless*-style common law tort action for discharge in violation fo public policy. *Knox v. Wheeling-Pittsburgh Steel Corp.*, 89 F.Supp. 1529, 1535–36 (N.D. W.Va. 1995) (Stamp, C.J.). "It is a well-established principle that federal and state anti-discrimination laws, such as Title VII and the West Virginia Human Rights Act, preempt *Harless*-type, tort-based actions for discriminatory treatment in the workplace." *Id.* at 1536; *Taylor v. City Nat'l Bank*, 642 F.Supp. 989, 998 (S.D. W.Va. 1986) (Haden, C.J.) ("a party may not bring a *Harless*-type, tort-based action to gain redress for violations of the West Virginia Human Rights Act."), *affirmed* 836 F.2d 547 (4th Cir. 1987); *Guevara v. K-Mart Corp.*, 629 F.Supp. 1189, 1192 (S.D. W.Va. 1986) (Haden, C.J.) ("a victim of discrimination is limited to the remedy afforded by the statute or whether he or she may pursue a *Harless*-type action.").

The WVHRA establishes both a substantial public policy as set forth in W.Va. Code § 5-11-2 and a private cause of action. In her Complaint, plaintiff acknowledges the availability of the WVHRA as a statutory cause of action. Thus, plaintiff's *Harless*-type claim for retaliation in violation of the WVHRA will be dismissed.

**V.    Plaintiff's Complaint must be dismissed because plaintiff's action was voluntarily abandoned and not diligently pursued.**

Plaintiff was given several opportunities to amend her Complaint, but she failed to timely do so. If plaintiff is granted leave to refile an Amended Complaint, defendant is in danger of prejudice. Defendant has diligently worked in the above-styled case. Defendant

15

has met all deadlines and was quick to respond in opposition when plaintiff wanted yet another extension.

Plaintiff has had two bites at the apple. This Court will not allow defendant to be further burdened by plaintiff's misfeasance.

If plaintiff's claims are not dismissed with prejudice, this Court believes plaintiff will attempt to relitigate her claim in a second action under the perceived authority of the West Virginia Savings Statute, § 55-2-18, which permits the "extension of period [of time] for a new action after dismissal or reversal where the [first] action is timely filed" in certain enumerated circumstances:

(a) For a period of one year from the date of an order dismissing an action or reversing a judgment, a party may refile the action if the initial pleading was timely filed and: (i) The action was involuntarily dismissed for any reason not based upon the merits of the action; or (ii) the judgment was reversed on a ground which does not preclude a filing of new action for the same cause.

W.Va. Code § 55-2-18(a)(i)–(ii).

"In several cases, [the West Virginia Supreme Court of Appeals] has pointed out the breadth of the pertinent statute and that, its purpose being remedial, it should be liberally construed for the purpose of accomplishing the intent thereof." *Henthorn v. Collins*, 146 W.Va. 108, 111, 118 S.E.2d 358, 360 (1961) (collecting cases). "[A] dismissal of an action which will save a second action from the effects of a statute of limitations must not be the result of voluntary action on the part of plaintiff, or must not amount to an abandonment of the action by the plaintiff." *Id*. "Good faith and diligence of the party invoking the benefits of the statute . . . is a necessary qualification in the absence of which he must be

16

denied the saving provision of the statute respecting a second suit." ***Bent v. Read***, 82 W.Va 680, 97 S.E. 286 (1918).

Here, plaintiff's failure to timely file an Amended Complaint amounts to a voluntary act by plaintiff.  The record is devoid of any action taken by plaintiff to save her previous case prior to dismissal.  For example, it took seventy (70) days for plaintiff to respond to defendant's First Motion to Dismiss.  This Court granted plaintiff two (2) extensions in which to file her response. *See* [Docs. 11 & 13].  On March 21, 2023, this Court granted plaintiff leave to file her Amended Complaint and directed she file it on or before April 11, 2023.  It was not until one day after the April 11, 2023 deadline that plaintiff filed her Motion to Extend Timeframe to File Amended Complaint.  Without leave from this Court, plaintiff filed her Amended Complaint to the docket.

Plaintiff also failed to file a response to defendant's Second Motion to Dismiss Plaintiff's Original Complaint With Prejudice.  A Response was due May 22, 2023.  This Court waited an additional week to see if plaintiff would file a Response.  Plaintiff filed nothing.  The factors here point to a lack of diligence by plaintiff.  The reason of plaintiff's delays are entirely under the reasonable control of plaintiff.[2]

---

[2] This Court notes that plaintiff's first Motion to File Pleading Outside Time-Frame [Doc. 10] stated plaintiff's counsel experienced theft of office systems, including two computers, I-Pad, and office bags. While this Court is sympathetic for the theft plaintiff's counsel experienced, it has been roughly four (4) months since the theft occurred and plaintiff's response time has only gotten worse.

17

## Conclusion

This Court **GRANTS** Defendant's Second Motion to Dismiss Plaintiff's Original Complaint [**Doc. 20**].  Plaintiff's Complaint [**Doc. 1-1**] is **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

It is so **ORDERED**.

The Clerk is directed to transmit true copies of this order to all counsel of record.

**DATED**: May 31, 2023.

**JOHN PRESTON BAILEY**
**UNITED STATES DISTRICT JUDGE**

18